Bland, Chancellor.
It has been the practice of this court, for a long time, in a great variety of cases; but, particularly in creditors’ suits, to have its decrees and orders carried into effect by a kind of occasional executive agents, called trustees; who perform offices, in many respects, entirely analogous to those of the regular executive officers of the courts of common law; and similar to those which, in the English Court of Chancery, are performed by the regularly constituted officers of that court, called masters in chancery. The trustees of this court hold a place under it, and discharge their duties in a manner entirely unknown to the English chancery system. The principles by which they have been governed have grown out of the nature of the cases in which they have been employed; and, although often modified, as propriety and convenience seemed to suggest, they cannot yet be regarded as being as well settled, and as generally understood as the nature of the subject requires.
Trustees appointed and employed by this court have always been considered as its ministerial officers ; and, in whatever way they may have originated, the power to employ such agents having been recognised and affirmed by several legislative enactments, it may be now considered as finally and firmly established. (a)
*140 There are many civil offices which, according to the common law, a woman is incompetent to fill, such as those of judges, jus *141 tices, &c. ;(b) but from the general language of our constitution, for there is no express provision upon the subject, it appears, that -women are virtually excluded from all the various offices of our government^ — legislative, judicial, and executive. From which it would seem to follow, that females could not constitutionally be-employed even as the mere ministerial agents of any one of the three departments; ox be commissioned to perform any executive duty required by any one of the courts of justice. In cases of lunacy, if the lunatic.be a female, it is generally deemed most proper to appoint a female committee to take charge of her person. And so in other cases of that class,..it has been sometimes held, that the comfort of the unfortunate person would be best promoted by having his person placed under the care of a female committee, as by appointing the wife to be the committee of her husband, &c.(c) The Chancellor of Maryland has always been regulated by similar principles and feelings; and therefore with a view to the peace and comfort of the lunatic, his daughter has been appointed trustee of his person with others who were constituted trustees of his estate, (d) In a creditors’ suit, where the estate qf the deceased was likely to be exhausted by the payment of his debts, the widow, on asking to be appointed trustee, with a view to save the commissions for *142 the support of herself and child, was, no objection being made, appointed trustee accordingly.(e) And so in other cases where the appointment of a female appeared to be well calculated to promote the interests of all concerned, she has been- employed as trustee to carry the decree into effect, (f) Hence it would seem, that although it does not often happen, that females are appointed as the executive trustees of this court, yet they cannot be regarded as incompetent to act as such in any case whatever.
*143 But where it appears that the duties of trustee are altogether, or in most respects incompatible with the duties of the office which the proposed person holds, such as that of the register of this court, a clerk, or a judge of a county court, &c., such person cannot be employed as a trustee by this court.(g) In general, where the sale or disposition of any property is to be confided to a trustee, he must be required to give security for the faithful performance of his trust; and, consequently, as no one can be so appointed who is incompetent to contract, an infant or a feme, covert cannot be a trustee in any such case. It is necessary, in all cases, that the trustee of the court should be a citizen, resident within its jurisdiction; not only, that he may be the better able to discharge his duties; but, that he may be continually within its reach and control; therefore, no one who is not a resident, or who is engaged in any pursuit, or who holds any office which may require, or subject him to go, or be ordered out of the State during any long intervals of time, — such as masters of merchant vessels, or officers in the army or navy, — can be appointed trustees. And as a trustee can only be appointed during the pleasure of the court, if he remove out of the State, neglect his duty, or is guilty of any injurious or improper conduct, he may, on application of any one concerned, be displaced, and another trustee appointed in his stead. (h)
In making the selection of a person to be employed as a trustee, the court exercises a sound discretion upon a view of the whole case; and as the Chancellor may allow himself to be actuated by feelings of benevolence upon such occasions, where he can do so without injustice to any one, he has therefore, as before observed, appointed the widow as trustee, that she might obtain the commissions for the benefit of herself and child. The recommendations of the parties are always attended to, and allowed to have their due weight as to numbers, amount of interest, and reasons assigned; where the parties are silent, it has been usual to appoint the solicitor of the plaintiff as trustee; but a plurality of trustees is never appointed except on special application by petition, motion, or suggestion. (i)
*144 The kind of duties required of a trustee, and the manner in which they are to be performed, are most usually particularly prescribed by law, or specified in the decree or order to be executed. But here a trustee is indulged with' a greater latitude of discretion in making sales of property than is allowed to a master in chancery in England, (j) In all cases where the trustee is directed to put the property into the market, by advertising and offering it for sale, he must do so; but, after that has been done, if it cannot be sold, at public auction, upon the terms specified, he may accept of a bid upon different terms, or he may dispose of it at private sale, or upon other terms than those mentioned in the decree; because as he is, in all cases, required to make a report in writing ,of only such a sale as he can, on oath, state to have been, in all respects, fairly made, which cannot be ratified, without consent, until public notice has been given to shew cause, if any there be, why it should not be confirmed; there can be no danger or inconvenience in allowing him to deviate from the prescribed manner and terms of sale, after the property has, by advertisement and an actual public offer to sell at the time and place appointed, been completely put into the market. A trustee cannot, however, be allowed, of himself, to do any act which, in similar cases, is usually required to be done by such an agent; but which has not been particularly specified in the order or decree, under which he holds his appointment; as where, in a creditor’s suit, the court had omitted, in its decree, to direct the trustee to give notice to creditors to file the vouchers of their claims by a specified day, the trustee was not permitted, of himself, to give any such notice. (k)
According to the common law, no public officer was permitted to take any fees for the performance of his duty, except such as were expressly, allowed by law, as a compensation for his trouble. Yet it appears, that judicial, as well as ministerial officers were allowed to make title to certain fees and perquisites by usage, and custom; and although it would seem, that no petty pecuniary charge should be permitted to intercept an extension of mercy, intended to save the life of a fellow creature, yet it is said, that in England, if a person pleads his pardon, the judges may insist on the usual fee of gloves to themselves and officers before they allow it.(l) Before *145 the revolution, the judicial and ministerial officers of the government, here as well as in England, were allowed to take fees ;(m) but the Constitution has declared, that no chancellor or judge shall receive fees or perquisites of any kind.(n)
' The fees- of all regularly constituted ministerial officers have been regulated by law;(o) and it is declared, “that the Chancellor shall have full power and authority to allow any guardians, trustees, agents, or factors, who shall make disposition or sale of either real, personal, or mixed property, for the purpose of paying the debts of deceased persons’ or others, under and in virtue of any order or decree'of the Chancery Court, a commission from one per cent to seven and a half per cent for their trouble in selling and disposing thereof, and paying the same away in pursuance of such order or decree as the Chancellor shall, on consideration of all circumstances, think jusFand right.”(p) By a rule of this court of the 14th of June, 1797, it was declared, that “ the standing order of this court relative to the commission of trustees for the sale of real estates having been lost or mislaid, ordered, that in future the following allowances shall be made: — On the first hundred pounds seven per cent., on the second hundred pounds six per cent.,” and so on, as in the existing rule, to the tenth hundred pounds, and then it is further declared, that “ all above £1000 at the rate of two per cent. This allowance is to be clear of all necessary, except personal expenses ; and is intended for cases where the sale is for ready money or to satisfy one debt only. Where the sale is on credit, or to satisfy more than one creditor, the Chancellor will make a further allowance from a half, to one and a half per cent., on the whole amount of sales, according to the circumstances of the ease.”
From which it may be inferred, that the lost standing order, of which this is a renewal, had been made in conformity to the act of assembly, and soon after it was passed. It appears, however, that although fees, which have been settled by the ancient course of the court, cannot be altered, but by an act of. the legislature,(q) yet this standing order, for regulating the commissions of trustees, has been frequently departed from ; for, there are many cases in which a commission, not thus graduated, and varying from -two and a *146 half to seven and a half per cent, on the whole amount has been allowed. (r)
But this act of assembly authorizing the allowance of a commission, as well as this rule by which that commission was graduated into the form of poundage fees, allowed to a sheriff for the sale of property taken in execution, it is evident, were both confined to sales made “for the purpose of paying the debts of deceased persons, or othersand consequently, although they applied as well to sales of mortgaged property as to sales in creditors’ suits, and the like; yet they did not extend to any case of á sale made of real, or personal properly, because of its indivisible nature, for the purpose of dividing the proceeds among those by whom it was held jointly or in common; nor do they apply to the case of a sale made, pending, a suit, of the property in litigation, because of its perishable nature, for the purpose of preserving its value to him to whom it may be determined to belong, by the final decree. Yet in these, as well as in all other cases, whether embraced by the act of assembly or not, the trustee has been allowed a commission, or compensated,for his trouble in one form or other. But by the existing standing order passed at March term, 1817, it is declared, that “ on sales under decrees or orders of the court, the following allowances to be made to trustees, &c. On the first three hundred dollars, seven per cent.; on the second, six per cent.; on the third, five; on the fourth, 'four; on the fifth, three and a half; on the sixth, three and a half; on the seventh and eighth, three; and on the ninth and tenth hundred dollars, two and a half' per cent. And three per cent, on all above three thousand dollars; besides an allowance for expenses not personal. The above allowance subject to be increased in cases of postponement, at the request of the defendants, or of extraordinary difficulty or trouble from other circumstances; and to be lessened in case of negligence, &c. at the discretion of the Chancellor.” This rule is expressed in the most comprehensive terms, and embraces all sales made by a trustee, under the authority of the court, for any purpose whatever.
The commission allowed to a trustee is given to him as a compensation for his trouble and risk in making the sale, bringing the *147 money into court, and paying it away in the manner directed; or, in other words, for the performance of ail the duties specified in the decree, and the subsequent orders in relation to the sale and its proceeds. It is sufficiently evident, from the language of the rules, graduating the rate of the commission into the form of poundage fees, that the commission allowed to a trustee has never been considered, iii any respect, as a commission in the mercantile sense of that term. A trustee of this court is a person of legal constitution, with legal duties; and though some of his duties may have a mercantile mixture in them, he does not transact them as a merchant. He acts altogether as a legal officer, and must be paid, as such, in proportion to his diligence, skill, trouble and risk; not exactly according to the value of the subject in litigation.(s) And therefore the term commission, in the mercantile sense, cánnot be applied to the compensation of a trasteé, or any other officer of this court. -But it has been found, in many cases, to be highly expedient, if not absolutely necessary, to have the property sold by an auctioneer; and it is obviously for the benefit of those concerned, that all sales should be so conducted,(u) although no fee is allowed to a sheriff for so making a sale.(v) Therefore it has been deemed proper to permit the trustee to employ an auctioneer, to whom may be allowed a fee, not exceeding five dollars, for each separate and unconnected sale.
Considering the nature of the office of a trustee, it follows, that as on the one hand, his compensation may, because of the -discharge of his duties being attended with a very unusual degree of labour and risk, be increased; so, on the other hand, his compensation, because of his duties having been improperly or but partially performed, may be altogether withheld, or proportionably diminished. As where it appeared, that the trustee had been under, the necessity of making several journeys or voyages, or had already, and should thereafter incur much extraordinary trouble for the purpose of executing the decree, he was allowed a compensation, in addition to the commission specified by the rule.(w) On the other hand, where the *148 trustee, after having given bond, had forborne, at the request of the defendant, to make the sale, he was allowed half commissións. *149 (x) And where the sale, made by the trastee, had been set aside without any blame having been imputed to him, and afterwards another trustee had been employed who had made sale of the same property, the first trustee was allowed half commissions. (y) And where the trustee, after having made sale of a part of the property, had removed beyond the jurisdiction of the court, he was allowed a commission of one and a half per cent.(z) And where the trustee, after having made the sale, died before he had reported it to the court, two-thirds of the commissions were awarded to his representatives, and one-third to his successor, by whom the sale had been reported and completed. (a) No general rule has, however, been laid down in any of these cases, and perhaps none can be established in regard to this matter; the circumstances of each case being so peculiar, that each, as it occurs, must be submitted to the sound discretion of the court upon its own particular merits.
In some cases the fund may, to a certain extent, be burthehed with double commissions, as in this instance; where the trustee dies after having actually received an amount of the proceeds of *150 sale equal to the sum allowed to him as commissions upon the whole, by a previous order of the court. , In such case the court cannot revoke its order, merely because of the death of the trustee ; and, therefore, the only mode in which this double charge could be prevented or corrected, would be to alter the practice, so as to postpone the payment of the trustee’s commission until the whole of his duties had been performed, or to authorize summary proceedings to be instituted, to make his representatives refund in part, with which the succeeding trustee may be compensated for his trouble in collecting the balance. Under such circumstances, it seems to be fair, by way of analogy to the rule laid down by the legislature in regard to sheriffs, and others,(b) to apportion the commission or poundage, where it can be done, between' the preceding and succeeding trustee .according to the sum which each may have collected, or on a consideration of the trouble and merits of each. But in this case the fund has been already charged with full commissions; and therefore should not now be again charged with more than a necessary recompense to the present trustee for his trouble; .which in this, as in all similar cases, must be regulated according to the services actually rendered.
Whereupon, it is ordered, that this trustee be and he is hereby allowed half commissions on the amount stated to have been received by him.

 1785, ch. 72, s. 7; April 1787, ch. 30, s. 5.
Pue v. Dorsey. — This bill was filed on the 9th of June 1784, by Michael Pue, William Goodwin and Milcah his wife, and Eleanor Dorsey, surviving executors of Caleb Dorsey, against Edward Dorsey, son of Samuel. The bill states, that the plaintiffs’ testator being seized and possessed of a large real and personal estate in iron works carried on in copartnership with a certain Alexander Lawson, in May 1772, purchased the share held by Lawson, for which he agreed to pay the sum of three thousand pounds sterling; soon .after which the testator made a codicil to his will, wherein, among other things, is contained the following devise:
“ I give to my two sons, Samuel Dorsey, and Edward Dorsey, and their .heirs for ever, to be equally divided between them, to hold as tenants in common all and singular the furnaces and iron works, tracts, pieces and parcels of land, negroes, white servants, horses, cattle, wagons, carts, and stock, of what nature and kind soever, and all and singular the parts, shares, and proportions of the furnace and iron works, tracts, pieces and parcels of land, negroes, white servants, hoises, cattle, wagons, carts, and stock of what kind or nature soever, which I have lately purchased from, or contracted to purchase from, and of a certain Alexander Lawson, of Baltimore *140 county, gentleman. And I do further direct, that such part of the consideration money as shall be due and owing to the said Alexander Lawson, for the aforesaid premises at the time of my decease, shall be paid equally, share and share alike, by my said two sons, their heirs, executors, or administrators.”
The bill fiirther states, that after the death of the testator these devisees took possession of the estate so devised to them; but having failed to pay the purchase money, Lawson brought suit against the plaintiffs, as executors, and obtained judgment against them, and had issued execution thereon; that Samuel Dorsey, one of the devisees, died some time in the year 1777, intestate, greatly involved in debt, without having paid any part of the debt due to Lawson, and leaving the defendant, his heir at law, then a minor, about two years of age; that letters of administration on the estate of Samuel had been granted to his widow, who had paid debts due by him, to an amount greater than his whole personal estate; that the portion of the debt due to Lawson for which'the devisee; Edward Dorsey, was liable, had been in part paid, and that there remained due of that debt from the estate of the intestate Samuel, the sum of one thousand five hundred pounds sterling money with interest; for the payment of which his real estate, which had descended to the defendant, was liable. Whereupon it was prayed, that'so much of the real estate, which had descended, might be sold as would be sufficient to satisfy the debt then due from the estate of the intestate Samuel.
The exhibits filed with this bill were, the codicil to the will of the testator, Caleb Dorsey ; a short copy of the judgment obtained by Lawson against these plaintiffs; and a certificate from the'register of wills, that the personal estate of the intestate, Samuel Dorsey, had been overpaid to the amount of £248 14s. 7d. The defendant having been returned summoned, and appearing to be an infant, Edward Dorsey, son of Caleb, was appointed his guardian to appear, answer, and defend this suit on his behalf; who accepted of the guardianship;* and put in an answer in his name in which he admits the truth of the allegations of the bill, and states, that it would be greatly for his benefit to have a part of his estate sold for the payment of the debt for which it was so liable, (Pow. Mort. 916, 1 Eq. Ca. Abr. 287.) In additon to this answer the guardian for himself says, “ I, Edward Dorsey, son of Caleb, guardian for Edward Dorsey, son of Samuel, the defendant in this case, do hereby consent, that the lands mentioned in the aforesaid answer or such part thereof should be sold under the decree of the Court of Chancery, as may be necessary and sufficient to pay the debts due, which is contained in the answer aforesaid,” (1773, ch. 7, s. 2.) Upon all which the case was submitted.
4th November, 1784. — Rogers, Chancellor. — Decreed, with the assent of the said Edward Dorsey, son of Caleb, as guardian of the said Edward Dorsey, son of Samuel, that he the said Edward Dorsey, son of Samuel, by his guardian aforesaid, do set up and expose to sale at public vendue, the several parcels of land in the proceedings mentioned, or such part thereof as may be sufficient to satisfy the complainants, &c. after giving six weeks’ notice thereof in the Annapolis and Baltimore newspapers, of the time and place of such sale, and the same when sold, &c. the said Edward Dorsey, son of Samuel, do and shall effectually convey and assure to the purchaser or purchasers thereof, their heirs and assigns, in fee, upon payment of the purchase money to the said Edward Dorsey, son of Caleb, as guardian aforesaid; that the guardian aforesaid shall, &c. satisfy the complainants, &c.; that the guardian afore *141 said do and shall, as soon as the several parcels of land, &c. are sold, make and lodge in this court, under his hand and with his affidavit of the truth thereof thereto annexed, a just and accurate certificate or memorandum of the said sales, to whom made, and at what price; and also as soon as may be, after the -receipt of the purchase money thereof, render to this court a full, just and true account, with his affidavit annexed, of his disbursements thereof to whom made, and at. what time; that the guardian aforesaid do and shall, before any sale, he: execute ahd file in this court his bond to the State of Maryland, with good and sufficient surety, faithfully to fulfil and perform the trust in him reposed by the said decree, &c. and that the said guardian do and shall, before the payment of the said sum of money to the complainants, obtain from them a bond to the State of Maryland with good surety, &c, to indemnify, save harmless, and exonerate the said Edward Dorsey, son of Samuel, his heirs, &c. from all charges, &c. on account of the judgments aforesaid obtained by the said Alexander Lawson, and from all claims for which he may be made chargeable by the said'codicil to the last will of his grandfather, or by any other means whatsoever.
It appears that the trustee gave bond, and returned an account of his disbursements of the proceeds of sale, with which tire record closes. — Chan. Pro. No. 2, page 186.
Bond v. Bond. — On a bill filed on the 1st of October, 1783, a decree was passed 2d January, 1786, for a sale of real estate, which sale was directed to be made by a trustee in a manner precisely similar to that directed by the decree in the aforegoing case. — Chan. Pro. No. 2, page, 612.

 In most of the proceedings about this time, it is stated that the person appointed “ accepted of lire guardianship.”

 The King v. Stubbs, 2 T. R. 395; Land H. Ass. 104, note.

 Ex parte Le Heup, 18 Ves. 226; Ex parte Ludlow, 2 P. Will. 635.

 H. Clagget’s case, MS. 7th December, 1826.

 Dowig v. Marvel, MS., 16th October, 1789.

 Ex parte Margaret Black. — The petition filed 23d February, 1804, seta forth, that the late George Black, by his last will, declared in these words: “ I also direct and devise the farm that I bought of William ICeating, together with what land I bought of Simon Weeks, lying on the south side of the road leading from Black’s Cross Roads to the brick meetinghouse, to be sold, and the money arising therefrom to be applied to the payment of my debts; residue and remainder of my estate, both real and personal, I give and bequeath unto my son James Black, who I do hereby nominate and appoint executor of this my last will and testament, and I do also appoint him guardian to all my children which may not be of age at my decease— that James Black qualified as executor and overpaid the personal estate £1122 15s. id.-, that under an impression that he was, as executor, authorized to sell the land, so directed to be sold, he had accordingly sold it to James Welch; and had received a part of tile purchase money. After which, James Black, by his last will had appointed tile petitioner his executor, and died; that there was still a considerable balance due to James Black. Prayer, that the Chancellor would ratify what had been done, on the ground, that he might sanction that when done which he might have directed to be done; or that he would authorize a private sale to enable James Welch to become ihe purchaser so as to affirm and reassure his title, and to have the purchase money applied in discharge of the claim of the late James Black, &c. Upon which the following decree was passed.
4th February, 1804. — Hanson, Chancellor. — The said petition with the last will and testament of George Black were, by the Chancellor, read and considered; and provided the facts stated in the said petition be true ; — decreed, that the real estate of George Black in the petition and will mentioned, as devised to be sold, be sold according to the directions and provisions of the said will; and that Margaret Black, &c. be trustee, &c. &c.; she shall proceed to self either at public or private sale, and on such terms and conditions as she may deem most advantageous to the estate, &c. &c. “ Provided, and it is the true intent and meaning of this decree, that if it shall appear to the trustee, that the sale made by her deceased husband, James Black, to James Welch, was a fair and beneficial sale for the estate, that the trustee shall then confirm and agree to the same, and make report to the Chancellor; and on the Chancellor’s ratification and confirmation, and on the payment of the purchase money, the trastee shall by a good and sufficient deed convey to the said James Welch and his heirs, the land he pm-chased, which deed shall have the same effect as herein before mentioned.” (Ex parte Mary J. Bayard, by her next fiiend, order 22d March, 1802; and 1818, ch. 193, s. 9.)
The trustee, Margaret Black, reported her approbation of the sale made to Welch, which on the 28th November, 1805, by an order, was to be ratified nisi, &c., publication to be made in the Easton newspaper, “ or set up and continued three weeks at the door of the courthouse of Kent county before the end of December next;” which order was afterwards made absolute.

 Bac. Abr. tit. Offices & Officers, (K).

 Ex parte Ord, Jac. Rep. 94; Logan v. Fairlee, Jac. Rep. 193; Berry’s case, MS. 14th May, 1803; Chew v. Birkhead, MS. 30th June, 1798; Kilty v. Quynn, MS. 5th January, 1813, and 1st August 1815.

 Edwards v. Buchanan, MS. 27th May, 1800; Kilty v. Quynn, MS. 5th February, 1805.

 Annesley v. Ashhurst, 3 P. Will. 282.

 Isaac Williams’ Estate, MS., 3d December, 1823.

 Co. Litt. 368; 2 Inst. 209; 3 Jac. L. Dict. 24.

 1763, ch. 18, s. 87, &c.

 Dec. Rig. art. 30.

 November 1779; ch. 25; 1826, ch. 247.

 April 1787, ch. 30, s. 5; 1816, ch. 154, s. 2 & 4.

 Ex parte Jephson, Prec. Chan. 551.

 Dulany v. Brice, MS., 27th December, 1794; Dowig v. Marvel, MS., 16th October, 1789; Anderson v. Anderson, MS., 17th April, 1789; Dorsey v. Cooke, MS., 16th October, 1789; Taylor v. Casanave, MS., 11th March, 1819; Mildred v. Neil, MS., 26th February, 1788.

 The Rendsberg, 6 Rob. Adm. Rep. 164; Wood v. Freeman, 2 Atk. 542.

 The Rendsberg, 6 Rob. Adm. Rep. 168.

 The King v. Crackenthorp, 2 Anstr. 412.

 The Rendsberg, 6 Rob. Adm. Rep. 163; Hindman v. Clayton, MS., 8th March, 1805.
Millar v. Baker. — This was a creditors’ bill, filed on the 12th of February, 1796, to have the real estate of the late Christian Baker, lying in Frederick county, sold to pay his debts, &c. On the 2d of June, 1796, it was decreed, in the usual *148 form, that the property in the proceedings mentioned be sold; -which was sold accordingly. After which the following remarks and orders were made:
8th December, 1796. — Hanson, Chancellor. — It is stated, that Jacob Scheisler contracted for the sale of a parcel of ground in Frederick county, to Christian Baker, for £ 50 on credit; that the contract was, that a deed be given on Baker’s executing a bond for the money ; that Baker took possession and died without having executed a bond, or taken a conveyance; but that, before his death Balter paid one year’s interest on the said £ 50, to Scheisler; that after Balter’s death his creditors obtained a decree for selling his real estate; that under the decree, the said lot, which had been improved by Baker, was sold with other property, in which Baker had a legal estate in fee ; that, since Baker’s death, Scheisler has neither received the consideration money, nor conveyed; but that he declares his willingness to convey, on receiving tlie money, although he will not file his claim in the Chancery Court.
On this statement, it appears unreasonable, that Scheisler will not exhibit his claim to the Chancellor; and that such exhibition would be convenient to all parties, by-saving the trouble and expense of a chancery suit, in which Scheisler might probably be compelled to convey on receiving his money. The Chancellor cannot direct money to be paid to Scheisler, unless he exhibits his claim, or is called to answer a bill or petition for conveyance. Upon the whole, the Chancellor thinks proper to declare, that, provided the above statement of facts be fiill and correct in every particular, it will be advisable for Scheisler to exhibit his claim to avoid inconvenience to himself and the parties interested in the trustee’s sale.
Sometime after which the case was again brought before the court.
2d September, 1797. — Hanson, Chancellor. — Ordered, that the sale made by Henry Kuhn, trustee of the real estate of Christian Baker deceased, as stated in his report here filed, be absolutely ratified and confirmed, no cause to the contrary, &c. although notice, &c.
Ordered likewise, that of the money arising from the said sale there be applied the sum of £14 13s. Od., for the costs of this suit as taxed by the register; that out of the said money there be allowed to the trustee, for his whole trouble and expense incurred, or to be incurred, in the discharge of his office, the sum of £36; that there be paid to the following creditors of the said deceased the sums of money set opposite to their names, with interest thereon from August 20th, 1796, to the time of payment.
Conrad Doll......£121 16s. 9d
(Then follows a list of twenty-three others.)
Ordered, that the said trustee, on the receipt of money from any of the purchasers of the aforesaid real estate, either immediately deposit the same in this court, agreeably to the directions of the decree; or without delay, distribute the same amongst the creditors aforesaid, according to their claims. And the attested written receipt of any of the said creditors shall be admitted in this court instead of so much money directed to be brought in.
Ordered, that the surplus of the money arising from the said sale remaining, after discharging the several sums herein before directed to be paid, shall be subject to the future order of this court.
After which, the vendor, Jacob Scheisler, having presented his claim against the estate of the deceased, the case was again brought before the court.
*149 22d August, 1798. — Hanson, Chancellor. — Ordered, that of the money to arise from, the sale of the real estate of the said Christian Baker, there be paid to the following persons, whose claims have been exhibited since the passage of the order for the application of part of said money, the sums set opposite to their names, with interest from the respective dates to the said sums annexed to the time, of payment.
Matthias Buckey - - - £ 3 Is. 8d. Oct. 7th, 1793.
Jacob Scheisler ... 50 Os. 0d. May 1st, 1793.
Jacob Baltzell ... 75 Os. 0d. Oct. 8th, 1797.
It appears on calculation, that the money to arise from the sale, (provided the purchasers shall all fully discharge their bonds,) will be more than sufficient to discharge the costs,' commission already allowed, and claims against the said Baker, directed by the former and present order, to be paid, In consideration of the extraordinary trouble already, and to be incurred by the trustee, it is further ordered, that he be allowed, in addition to the aforesaid commission, whatever surplus of the purchase mobey may remain, after folly discharging the costs, and all the claims against the said Baker, with interest, directed by the present and former order, to be paid; provided he shall.prepare or have prepared, at his own expense, deeds to be executed by the aforesaid Scheisler and Baltzell, conveying unto him and his heirs the land, by them contracted to be conveyed to the aforesaid Baker, in trust, that he shall convey the same to the purchaser, or purchasers thereof under the original decree in this cause; or provided he shall procure conveyances from the said Scheisler and Baltzell to the said purchaser or purchasers after his receipt of the whole purchase money.
N. B. It may be proper for the said Scheisler and Baltzell to join the trustee in his conveyance to the purchasers.

 Carroll v. Jones, MS., 14th September, 1821.

 Lawson v. The State, MS., 3d July, 1810.

 Berry’s Case, MS., 14th May, 1803.

 Selby v. Selby, MS., 1st May, 1819.

 1795, ch. 88, s. 6; 1813, ch. 102, s. 5; Bac. Abr. tit. Sheriff (I).